Good morning, your honors. May it please the court. My name is Teresa Collette, and I represent Mary Doe, as well as baby Nicholas, his mother, Rachel Brown Lee, and his grandmother, Marion Brown. Your honors may recall a recent horrific story about Vanessa Pierre, a nurse practitioner who was strangled and ultimately died on the side of the highway here because she was carrying a child that was more than six weeks, more than six months pregnant. In that instance, because of the RHA, notwithstanding that both she and her viable unborn baby girl died because of this assault, the prosecutor could bring only one charge. Can I ask a more straightforward and procedural question? There are two complaints here, one with a named plaintiff and one without. So what are you, you wish to go forward on the named plaintiff case, the baby Nicholas case, with his mother and grandmother, his next friend? Your honor, it's my understanding that we have to reopen the original case because of the mistake that the trial court made in requiring a substantial relationship with Mary Doe. And in that instance, we would then be allowed to file our amended complaint. And yes, we want to go forward on the second complaint. So in other words, if we agreed with you on that complaint, that the district court erred under Rule 60, then that would, we would have no need to go back to the next friend issue regarding Mary Doe. Assuming he would appoint Mary Doe, although he did indicate in his ruling on the Rule 60 issue that because both Rachel and Miriam, in his words, did not have a sufficient relationship with other members of the class, that he would not find that they could serve in that capacity. We would believe that that would be error again and would be sure very quickly. Your position is that they would have to have a relationship with the named plaintiff, but not with the entire class. That is correct, your honor. But of course, the named plaintiff would have to represent, to have interests aligned with the entire class. That is correct, your honor. And in this particular instance, baby Nicholas was protected while in utero, viable at the time, was protected by a protective order that had been issued by one of the district courts in the county in which he presided. The former sexual partner of his mother had threatened to, quote, burn the house down and kill her and all of her relatives as well. He had already attempted to assault her several times, and so in this instance, there's really not much question. I mean, which way does that cut? I mean, the fact that he was attempting to cut her, assault her several times, even when there was a fetal homicide law on the books, does that, I mean, wouldn't you have a problem showing there's a causation between the change in the law and the potential assault? No, your honor. As the district court correctly found when it was really on our initial complaint, causation and traceability are clear because if you take our allegations as true, and again, we're just trying to get back into court. We've not had a chance to provide any evidence beyond our three declarations attached to our complaint. But if you look at that, the traceability of the threats, it's an imminent threat that meets the standards of Susan B. Anthony from the United States. Well, I know that it's an imminent threat. I understand that it's an imminent threat. I mean, if you're saying you have standing to challenge the change in law about the fetal homicide law, wouldn't you have to show that there's an increased threat because of the change, the repeal of the fetal homicide law? Your honor, again, the district court found that that was, that we had properly alleged  And in this instance, we simply have to- The district court said that it was too speculative to say that the change in that law would lead to an assault against baby Nicholas. Your honor, in addressing the women's claim, the- Yes, the district court did say that. It does seem like those are intentions. The district court said it's plausible that the change, the repeal of the fetal homicide law would lead to increased assaults against pregnant women because there's less of a deterrent. Right. The district court did not seem to apply that same reasoning to baby Nicholas or to the unborn children class. You are correct, your honor. And the tension, we believe, should be resolved in favor of the original holding that, in fact, it is sufficient traceability in this instance. Isn't that an unusual theory of standing, though? I mean, a change in the law to say if at one point the law recognized elder abuse as a particular harm and that there's a change, legislative change, can you really say that a class of people has standing by virtue of that alone? You wouldn't say that. Well, your honor, in fact, in a, forgive me, a United States Supreme Court case, they found that migrant birds, people who wanted to watch the migrant birds had standing as a class to bring a challenge of an EPA regulation that deprived them of their right to enjoy that in the future. We believe in this instance. Because a change in law would make it more likely that the migrant birds would be killed. That is correct, your honor. Can I ask, then, about the merits? So don't we know that the due process clause doesn't provide a protection against private violence? So even if, you know, baby Nicholas and the class had standing, how would the Constitution tell New York State what criminal laws it can enact or change? Your honor, I beg your pardon. Or enforce, I was going to say. Yes, your honor. In this instance, we believe that we fall into the state-created danger, which is an exception that the Supreme Court did recognize in Ducheney v. Winnebago County. We believe that the vast publicity, but even more than that. Well, that's when the state has somebody under its control, like somebody who's incarcerated and so on. And so then, you know, the state has to decide whether to provide. Oh, you're saying, like, the state is sort of saying it's open season on these people and encouraging violence against them? That kind of an exception? Yes, your honor. We believe that to be the case. So you think just by repealing the fetal homicide law, the state is encouraging people to commit fetal homicide? No, your honor. But in this particular instance, as our petition shows, there were charges of homicide that were having to be dismissed where a woman and her unborn child had been killed. And the prosecutor had originally brought dual homicide charges. But once the law went into effect, the prosecutor had to drop the second charge. The second charge, but not the first charge, right? So it's still being penalized. No, your honor. The death of the unborn child was not being penalized. It was merely the death of the woman. Well, I understand. But the assault on the pregnant woman is being penalized. And the effect on the unborn child is an aggravating circumstance that could lead to a more severe penalty for that, right? Your honor, the difference in this case is there is no vindication that there was in the law previous to the passage of the RHA. It's as if the state of New York adopted the theory that was floated in the Journal of the American Medical Association of afterbirth abortion. In that article, two doctors argued that, in fact, it should not be considered homicide when a small child under the age of two who is disabled is killed. It's possible that the state could adopt that, but it would clearly violate the 14th Amendment. This case is no different, your honor. There's any basis to think that fetuses will be in more jeopardy, more likely to be harmed, because of this change in the law? I mean, you'd have to still kill the mother generally to kill the fetus, right? No, your honor. In fact, there are a number of cases listed in our complaint, both the first and the amended complaint, evidencing cases where the woman survived and the child was killed. But, I mean, the assault against the mother is going to be prosecuted. So you're saying that a person is going to say, well, I'll take my chances because at most I'll be charged with one murder instead of two? No, your honor. In that instance, the hypothetical you provided, in that instance he would only be charged with No, no, I get that. That's obvious. The point is you're suggesting that this change in the law has made it more likely that the unborn child is going to be harmed as a result of assaults. And that seems hard to imagine, actually, when the assault will necessarily involve an assault on the mother, and that will be prosecuted, right? Your honor, the theory that you're suggesting would say that as long as we punish one of multiple victims, that it's sufficient and we need not punish the other victims. No, no. You have to show that there is a likelihood that your clients will be harmed, more likely to be harmed as a result of this change in the law. But your honor, in this instance, the whole theory of criminal law is the more severe the sanction, the less likely the individuals are going to engage in it. It's a theory of deterrence, individual deterrence. And in this instance, the trial court, at least in the case of the women So about the deterrence, the state points out that you could still get a pretty severe sentence if you assault a woman and it leads to the death of the unborn child, and it might be the same kind of sentence as if you brought two counts for the assault and the fetal homicide. But you're saying that there is some class of people in New York State that will see that there isn't a separate count for fetal homicide and not appreciate that the penalty for the assault could still be of the same severity, and so they're more likely to assault pregnant women and cause the death of the unborn child? Yes, your honor. Isn't that sort of weird? We're sort of saying that there's some class of people who understand the law insofar as they understand there isn't a separate fetal homicide law, but they misunderstand the law insofar as they don't appreciate that the penalties for the assault can be increased based on aggravating circumstances such as the death of an unborn child. Again, your honor, the question before this court is whether we plausibly allege the elements that were necessary to establish standing and to bring our complaint to the court. Essentially, the trial court in this case has closed the doors of the courthouse to this class of children. Right. Can I ask you, you said a moment ago that if New York State had adopted the rule that would allow a post-birth abortion, that it would obviously violate the 14th Amendment. Why would it obviously violate the 14th Amendment? Because, your honor, the whole purpose of the 14th Amendment was to ensure equal protection of the laws, and in that instance, a two-year-old would be treated differently for purposes of protection of his life through the criminal law than a two-year-old in one day. In this case, actually, your honors, a man… Right, so the state would have to explain why they're treating somebody of that age differently from somebody of a different age, right? That is correct, your honor. That would get a kind of rational basis analysis, wouldn't it? Your honor, I think this is a textual right contained in the 14th Amendment, so it would be strict scrutiny under those instances. It would be strict scrutiny, why? Because it's a fundamental right that's articulated in the Constitution. Which is what? The right to life. Well, again, but now you're moving from the equal protection to the due process clause. And as we said, the due process clause protects somebody against state deprivations of life, liberty, or property. It doesn't protect you against private violence, right? Your honor, in the Second Circuit, in fact, if it's a state-created danger, it does protect us against private acts of violence. Yeah, but you're saying that every time the state changes its criminal laws to increase or reduce punishments for certain conduct, it's a state-created danger, and therefore the due process clause constrains the degree to which the state can define its own criminal laws? Your honor, this was not a mere reduction in penalty or an enhancement in penalty. This was an elimination of protection under the criminal law in toto. Prior to this, for over 200 years in the state of New York, children, after quickening for a period of time, was protected by criminal law. That was revised to post-24 weeks. That's all that we're asking this court to do. But because the mother can still be prosecuted for assault, it's not right to say that it is a complete deprivation of protection. The circumstance of an unborn child is different from the circumstance of people walking around in the world. And here, there is still a penal protection in the prosecution that could be lodged based on an assault on the mother. Your honor, the mother and the child are two separate beings. As we allege and provide affidavits or declarations to support. And because of that, again, you're suggesting that the punishment of one of a multi-victim crime, the punishment on behalf of one victim, satisfies retribution for all of the victims. That simply has not been a theory of the law here in the United States. Post-Civil War, we were seeing a great deal of that sort of justice, and that's why we passed the 14th Amendment. This is a separate, unique class of human beings. The only separate, unique class of human beings that has had no protection. And even under the U.S. Supreme Court opinions today, with the Dobbs opinion having eliminated Roe and Casey, these are, they satisfy 14th Amendment personhood under both the Levy v. Louisiana case, as well as the Galana v. American Assurance case. In both of those cases, the Supreme Court said that a person, for 14th Amendment purposes, was a human being in being. Our complaint clearly alleges that and provides evidence in support in the form of the declarations. Well, Dobbs also says that states have the discretion to decide how to balance the competing interests in defining its abortion laws, and that those laws get a rational basis review from the courts. Why shouldn't that standard apply here? Your Honor, in the Dobbs opinion, Justice Alito clearly distinguished the act of abortion from any other form of act. He clearly states that what are unique about these cases is that they involve the taking of a human life. That's also the holding of an en banc opinion in the Eighth Circuit in Rounds v. Planned Parenthood. In this instance, Your Honor, we can see that the state is free insofar as there are two competing interests in that state, between the woman's right to terminate her pregnancy early, which is all the Supreme Court has defined it as in the Dobbs opinion, and the In this instance, one right is going to be supported and one right is going to be diminished and eliminated. And therefore, the states have to choose which one are they going to give priority to. New York has given priority to the woman's right to terminate her pregnancy early. Texas has given the right to protect the life of the child and continue its development. That's federalism. But once that child can be removed from the womb at the mother's request with no need to kill it, abortion is not the right to kill. Abortion is the right to terminate a pregnancy early. And that's why viability is important in this case, Your Honor. We've limited our complaint only to post-viability. In those instances where a child's life can be preserved and the woman's right to terminate her pregnancy can be preserved. There is no conflict between those two. Well, the Dobbs opinion was pretty critical of Roe's viability analysis, wasn't it? It said the court shouldn't be in that business. Judge Sullivan, actually, they were pretty critical of all of Roe's analysis, period. But it seems to me you're asking courts to get back into that business. Your Honor, I believe that's exactly what the Dobbs opinion does. And, in fact, I just filed two briefs this week in the Supreme Court as an amicus on two more abortion cases. So they didn't really get out of the business. The point I'm saying is that you're saying that the courts have to decide on the basis of viability. They've got to basically decide when the unborn child is viable. And then the law has to basically follow from that court determination. Right? It's not a legislative determination. That is a court determination. No, Your Honor. In fact, the courts have historically noted, and we would agree with opposing counsel, that viability is a medical determination. Because it will depend. A child that at 24 weeks is born in Alaska, 100 miles away. It would be a medical determination, but that is going to have to be either a medical determination that is made law by the legislature or by a court. Doctors are not going to be imposing law on anybody, right? No, Your Honor. That's true. So it seems to me you're basically saying that the Supreme Court wants to get back, should be back in this business of deciding viability and weighing the interests of the mother's, as you described it, right to terminate and the unborn child's right to life. Your Honor, a child that's born at 24 weeks in the NICU being supported so its lungs could develop a little further. Someone comes in and kills that child. There's no question that a homicide proceeding would be appropriate in that instance. The same child in his mother's womb, when she's walking down the streets of New York and is viciously attacked, she survives the attack, but the child is killed. That is not equal protection. It simply cannot. We thought that Dobbs said that abortion regulations get a rational basis review. Isn't there a rational basis for that distinction in that whenever you assault a child in the womb, the mother has to also be assaulted, and so therefore the state might determine that punishing the assault against the mother would be sufficient to deter that kind of conduct. But when the child is born, you need to have a separate penalty because the mother and the child are not together. In fact, Your Honor, the New York courts themselves have found that in instances a child has independent standing from the mother. One of the cases dealt with the ability of the child to receive public benefits when the mother didn't economically qualify. The unborn child was treated as a separate individual. There are several other cases in that instance, Your Honor. No, no, maybe you can, but my question is just if the legislature decides, well, the penalties for assaulting the mother will be sufficient to deter conduct that would harm the child in the womb, but if the child is born, you can't punish the harm to the child by laws that punish the assault on the mother, and that's a rational basis for that distinction. Why isn't that right? Your Honor, in this instance, we're talking about the taking of a human life. I can think of no case in which the United States Supreme Court has allowed that sort of unequal treatment and agreed that it's permissible under equal protections. But the remedy seems to be an issue here. I mean, using the example you said where a child is born and then killed within minutes by the doctor, you're saying that would be murder and prosecutable. But if the district attorney decided not to prosecute, I mean, a court couldn't or certainly hasn't in the past ordered prosecutors to prosecute. Are you aware of any case where that's been the remedy imposed by a court? Your Honor, I apologize. I actually read one yesterday, but I can't pull it up in my memory. Where a court enjoined a prosecutor to affirmatively prosecute a case? To not prosecute a case. I apologize. It's out of the state of Texas, and there was a- But you're asking for the other. You're asking for the inverse, right? You're asking effectively for a remedy that either directs the state of New York not to prosecute homicide, unless you're going to prosecute homicide against unborn children, or directing the state of New York to prosecute the deaths or the murders of unborn children, right? I'm sorry, Judge Sullivan. I'm not following. Well, it seems to me the equal protection argument is that the unborn children have to be treated the same as anybody else who would be a murder victim, right? Correct. Okay, and so- Viable unborn children. So that requires then an order that the state prosecute such crimes, right? No, Your Honor. All this court need do is, first, allow us back into the case, and, second, let us persuade the trial court, ultimately, that this particular part of the Reproductive Health Act is unconstitutional and strike it. New York has a- Right, so you would say that the repeal of the field homicide law is unconstitutional and, therefore, invalid, and so New York has to operate as if it's on the books, but that would prevent prosecutors in individual cases from exercising discretion about whether to bring charges and what penalties to seek and so on. That is correct, Your Honor, but that's true of every crime. Right. And so in this particular instance, there's actually a case out of Chicago- Well, if the state, in fact, because it has prosecutorial discretion, just decides never to prosecute anybody for fetal homicide, would that also be a constitutional problem? Yes, Your Honor. Insofar as if there were clear requirements that they do so. But in this instance, what would happen, Your Honor, is New York has a statute, a revival statute, that if this particular provision is struck down as unconstitutional, the old law goes back into effect, which will protect viable unborn children beginning at 24. Can I just ask about the scope of your argument? So if New York decided to repeal laws against adult homicide, would that be unconstitutional? I believe so. I remember when Ducheney came down, I was in law school and I asked my con law that professor, and he wasn't quite sure either. But I think that's the fundamental duty in this instance of the government. So the Due Process Clause actually requires states to maintain criminal laws that protect life and liberty and property. If New York State changed the penalties for adult homicide to reduce those penalties such that it was more likely to occur, would that be a violation of the Due Process Clause? I think prospective victims could bring suit, Your Honor. So, I mean, isn't that a pretty dramatic interpretation of the Due Process Clause, that it actually constrains the degree to which the state can define crimes and its own criminal laws? I mean, haven't we traditionally understood that to be the province of the states? No, Your Honor. In fact, the United States Supreme Court in Ducheney itself said where the state creates the danger, there can be a cause of action that is constitutional. Yeah, but that's where the state puts somebody in particular peril. You're saying just by changing the laws, it's created the danger by reducing the penalties. Again, Your Honor, this is not a case about reducing penalties. This is the case about eliminating penalties. No, I understand, but I'm trying to understand the scope of your argument. So you're saying maybe the Constitution says it's impermissible when the penalties are eliminated, but if the penalties are only reduced, then the Constitution doesn't say that. But why would that be? So if the state actually just reduced the penalties to a large extent, wouldn't that have the same effect of encouraging that kind of private violence? Well, Your Honor, if we go to the criminal law, we can see that the court treats the imposition of the death penalty very differently than it does a life sentence or any other sentence. And in this instance, what they would be doing is basically declaring open season, and that's what they have done in this instance, Your Honor. Viable unborn children have been protected in this state for over 200 years, and in this instance, these are children capable of living independent of the mother. It also protects perpetrators of violence. Pregnancy is clear based on our declarations. Pregnancy is a heightened risk of intimate partner violence. Our listing of cases, our declaration shows. In fact, 25% of all domestic violence occurs on women that are pregnant at the time. It's a lethal problem, and the state has made it worse. But, again, all we're asking is for this court to let us into the trial court to make these arguments fully and brief them fully, and then I can see in about three years we may be seeing you again. Thank you, Your Honors. Good morning, Your Honors. May it please the court, Laura Etlinger for the appellees. The judgment and the denial of post-judgment relief can be affirmed in this case either on the ground that plaintiffs have failed to establish standing to pursue their claims or on the ground that a fetus is not a person within the meaning of the 14th Amendment. I'd like to start with some of these standing issues that have been discussed and in particular about the aspects of the Reproductive Health Act that decriminalized abortion, took the regulation of abortion, which was what the statutes were. They were not intended to be more widely homicide crimes. They were very specific to abortion, and the state made a decision to remove them from the criminal code and address the issue of abortion through the public health law. That is quintessentially a protected policy decision that a state can make, and it is well accepted and would be very- Why does it entail the repeal of the fetal homicide law? Why is that a regulation of abortion if it's like involuntary harm to the child? Well, what was repealed was the homicide crime of abortion, which happened to be worded in a way to include an act upon a pregnant individual with the intention to cause a miscarriage, and that particular language in the definition of abortional act had been used somewhat creatively by prosecutors to charge the crime of abortion in cases of assault where they believed they could show an intent to cause the miscarriage of that pregnancy. So there wasn't a separate crime outside the regulation of abortion, and when the state made a decision- Well, wait, wait. I mean, if somebody walked up to a pregnant woman on the street and decided to injure her in such a way as to end her pregnancy, under the old law, that would be attempted murder of two, and it would be, if it was successful, the murder of two, right? Yes, it would be. It could be charged- And now it's not. Now it couldn't be. Now it is not, and- So how is that a regulation of abortion? Well, it was because it- Well, this- No, I mean, it seems it's clearly designed to eliminate a rhetorical argument that has been made by opponents of abortion, but I don't think you'd call that a regulation of abortion. Well, the state did decide not to have criminal penalties associated with direct intent to cause a miscarriage or the death of a fetus. That decision, how to address an issue, is for the state to decide, and private individuals, it is well settled, do not have a due process right to compel the state either to prosecute or not prosecute in a particular instance. That's a merits question, right, whether the Constitution actually prevents the state from changing the laws in this regard. But in terms of standing, here the district court says, I think the pregnant women have standing to challenge the change in law because a decrease in deterrence of assaults against pregnant women plausibly would increase assaults against pregnant women. Why doesn't the same logic apply to the class of unborn children? Well, I would have a few responses. First, I would submit it is an issue of standing. That is how the Supreme Court analyzed it. For example, in the Diamond v. Black case cited in our brief and United States v. Texas, that there was no judicially cognizable interest that the federal courts were in a position to be adjudicating when the question was does the state want to enforce its laws this way or to retain a criminal law. Diamond v. Black actually concerned the standing of an individual who sought to have a state, it happened to be an abortion law in that case, reinstated that had been subject to a permanent injunction. That individual who had been an intervener in the courts below sought to bring that issue to the Supreme Court and was the only party, the state did not seek review, and that intervener was the only party seeking to bring that issue to the court and the court said that's not a basis for standing. But let me ask you this. So if New York decided to say we're going to also change our law to say that the murder of a Down syndrome child up to the age of five will not be treated as a homicide. The Down syndrome children under the age of five are not persons. Nobody's got standing to challenge that? Well, there have been cases. So what would be the difference? Why would there be standing in that case for somebody to come in as a next friend and not in this case? Well, in those cases, and we cite one in our brief from the New York Court of Appeals, Liberta, the way that was challenged as an improper line drawing and equal protection was actually by a criminal defendant who could not take advantage of the criminal exception or decriminalization and claimed it was a violation. So the only one with standing would be the murderer of a six-year-old Down syndrome child. Is that what you're saying? Well, the cases have been very clear that the decision of whether to handle something through the criminal law or through some other means does not give an individual a private right to, even a would-be victim, does not have a private right to challenge that determination, that that is a policy decision that can only, the only ones I'm aware of that have come up in that instance where there was standing was in the case of another defendant. And here I would also point out we didn't have the total elimination of penalties for the conduct that is being regulated. And I would also just like to mention as further evidence of the political nature of the question, there have actually been bills introduced into the New York legislature that seek to create a separate assault crime of assaulting a pregnant individual. And that's really the ultimate answer with respect to a private individual that thinks something should be a criminal matter or not a criminal matter or have certain penalties. Just to get the scope of your standing argument, so if the state repealed the fetal homicide law only to some extent, but they did it along race or lines of race or sex that it was permissible to, that they still penalize fetal homicide if the unborn child is of a certain race but not if it's a different race, you're saying nobody would be able to come in and say that's an evil protection violation? The only cases I'm aware of that have anything similar to that regard have involved other criminal defendants. The standing in that case would abut against this rule, this well-settled principle, that states are in their own determination of how to address different problems within the state, including matters of violence, including matters of other potential public harms, that the state is the one to determine as a general principle whether to address it through criminal penalties or through other ways. What those other ways would be in that kind of extreme example may be hard to imagine, but that's the general principle. Even if we get beyond that, though, with respect to standing, as the court recognizes just with the challenges to the decriminalization, there are problems with causation in this case because the theory of the case that by eliminating separate penalties when an assault causes the death of a fetus, the state has increased the likelihood of assaults against pregnant individuals with the intent to cause a miscarriage. It would be an unprecedented way to look at the rule of causation or state-created danger. Why is that unprecedented? So the district court did say it used to be that if you assaulted a pregnant woman, you'd be subject to charges for the assault and for the potential fetal homicide, and now you're only subject to charges for the assault, and I think it's plausible that that would increase assaults, and so therefore the district court said that actually the class of pregnant women had standing to challenge the law. Do you think the district court was wrong about that? We do think the district court was wrong on that. So what's wrong with that logic that there's an increased – there's less deterrence against assaults against that class of people, and so therefore they can allege harm? Well, it's simply too speculative both as to an imminent danger, an imminent injury for purposes of standing and for purposes of causation. There has to be a reasonable and logical likely connection that – Well, why isn't that reasonable and logical, I guess, is my question. So if you were subject to two charges for the same act before and now you're only subject to one charge, isn't it plausible to infer that it's decreased deterrence and therefore you're increasing the risk to the victim of that conduct? In particular in this case because the penalties for assault can be much higher than the limited penalties that were available for the crime of abortion, which was two to seven years, and assault can go – first-degree assault can go up to 25 years. So you're saying actually the penalties are not reduced, that it's looking at it only halfway to say that there's two counts versus one count, but actually the relevant thing is the punishment that's meted out for the conduct. With respect to the punishment, that is correct. And, again, even if we get beyond that, the state-created danger rule has never been applied in this type of circumstance. If I may, I'd just like to – oh, I'm sorry. Before you move on, do you mind addressing just the standing with regard to count four specifically? This is the equal protection claim that distinguishes between fetuses of 24 weeks or less and older fetuses. Yes, that's exactly where I was headed. There are counts that challenge the specific standards that were set in the public health law provision that now regulates abortion. With respect to the claims challenging that law, plaintiffs have failed to identify a specific identified plaintiff or even an identified real party in interest who meets the criteria for standing with respect to that challenge. The only identified claimed real party in interest was Baby Nicholas, who was proposed as a plaintiff in the proposed amended complaint. But as the district court correctly found, Baby Nicholas, no imminent danger, no imminent injury could be shown to Baby Nicholas from the regulation of abortion under the public health law because there was no allegations and no evidence that that fetus was in danger of being aborted under any of the facts. So if they swapped in a different plaintiff with a next friend, the father of an unborn child whose mother was intending to get an abortion, that would be sufficient standing under your analysis? That would be a very different scenario. It would be very different. I agree with that. And the question there would be, is there an imminent injury? Is there a legally cognizable interest? I mean, you would still have those additional questions. Okay, well, the imminent injury wouldn't be hard, right? The father is saying that the mother has said she's intending to get an abortion. And the father, his next friend of the unborn child, says, I want to bring a suit. That a fetus, if a fetus was a person that could assert those rights, it would seem that fetus is subject to injury. We're talking about standing now, so I guess you were saying that the problem here is that Baby Nicholas is not really subject to an imminent harm. My example, there clearly is an imminent harm. Yes. And then in that lawsuit, there would be the additional questions about standing. But in this lawsuit, that was the only identified plaintiff that could claim, you know, potentially claim any injury as a fetus. And other than that, plaintiffs brought this suit only on behalf of a proposed class of unidentified fetuses. And it's well settled that styling a complaint as a class action does not promote the standing basis for your claim. There has to be a named party, a named plaintiff, or at least with respect to appointment of a representative for a minor or incompetent, an identified real party in interest whose standing in the matter can be analyzed. In Your Honor's example, is that individual fetus actually subject to a pending abortion or not? That inquiry is always made with respect to an identified individual. So is your conclusion that such a person, I understand, or such a fetus, I understand you say that there is not one in this action but would have standing? No. That would be the question to be analyzed in a case where a complaint was brought with an identified individual and a proper representative and all the circumstances for standing were met, causation and redressability and legally cognizable interest. Unless the court has... In that case, you would say that there might be causation and there might be redressability, but you still wouldn't think it's a legally cognizable interest to challenge the abortion regulation? Well, we would submit that fetuses do not, because they are not persons within the meaning of the Constitution, they would not be in a position to assert constitutional rights, which can also be viewed as a standing question because there is no cognizable constitutional injury. And we think that flows... Well, that's what they want to litigate, right? They want to litigate whether the fetus is a person with constitutional protections, and that, I guess, would turn, according to your adversary, on science, and maybe we'd hear from experts and maybe we'd learn about viability and what the fetus is or is not capable of doing at 24 weeks. Well, I would submit that Dobbs really answers both parts of that question. First, it's really very difficult to read Dobbs' analysis consistent with the proposition that in having the ability to weigh and balance the potentially competing interests that are involved in the issue of abortion, that in balancing those, the state, on behalf of its electorate, can make that decision as a policy and political choice. Why is it hard to see that? States balance interests in criminal laws that apply to adults, so if the state is deciding what the penalties are for adult homicide, it weighs the protection of life of its citizens against what is just punishment and what is adequate deterrence and so on, and some states might have higher or less lower penalties for adult homicide, but nobody thinks adults are not persons under the Constitution, right? And, in fact, you don't really believe that because your position is that the Due Process Clause doesn't require the state to have any particular criminal laws. So whether an unborn child is a person or not under the Constitution, you would think the state would still have the same right to define its criminal laws and regulations of abortion, right? It would be unprecedented to find standing based on behalf of an individual to challenge that determination whether to criminalize or not criminalize certain conduct. So the argument still works even for adults who you don't dispute are persons, that the state still has discretion to balance interests in defining the criminal laws and punishing adult homicide. It just shows that this argument that, well, if the unborn child were a person, you couldn't have any regulation of abortion, that's just not true, right? Because states have discretion over defining the laws that apply to adults in the protection of their lives, liberty, and property, and so it would apply to the unborn child, too, regardless of whether you think that that's a person or not. We really submit that the best reading of Dobbs, and it's very difficult to read it otherwise, was that the court was— Well, I don't find it difficult to read it otherwise, so I guess that's what I'm saying. So two things. One is that Dobbs actually has an express statement that this opinion does not rely on a view of whether unborn children are persons or not, so it's pretty easy to read that sentence and say that that's what Dobbs is about. And so then the other point you're making is it's hard to read Dobbs as saying that unborn children are persons because if they were, then states couldn't limit abortion, but that's just not right. I mean states can decide how to punish adult homicide, whether more severely or less severely, and nobody thinks that the due process— well, some people might, but your position is that the due process clause doesn't limit the way the state can do that. And so why wouldn't that also apply to abortion regulations, even if the unborn child is a person? First of all, I'd just like to say something about those particular statements in the Dobbs decision. When they are read in context, the court was addressing an argument by the dissent that the Constitution—as the majority viewed the dissent's position, that the Constitution precluded a state from considering the interest in potential life, at least at certain stages. And the court's response was saying—the majority's opinion's response was saying this opinion doesn't take a view on whether fetuses under state law should be accorded certain rights or not. And I think that's clear from another statement in the opinion at page 254, which says the same thing, but directly with respect to state interests. And it's also not critical to an affirmance in this case that the court reached this issue of whether fetuses are persons within the meaning of the Constitution. There's other arguments, but I just want to explore this one. I guess I have this question. If one were to conclude that unborn children are persons under the Constitution, would that entail a conclusion that states cannot allow abortion? It would be a troubling question. All right, so then right now, people who are persons. So if New York State wanted to reduce the penalties for adult homicide or even eliminate the crime of adult homicide, would that violate the due process clause?  I'm actually asking about the merits question. Does the due process clause limit the criminal laws that New York State can enact? Not as a general principle. Okay, so then even if the unborn child is a person, it still wouldn't say that states can't allow abortion or decide the extent to which it should be allowed, right? That's certainly a view and certainly a way to read Dobbs and understand it. We have a different position about how the decision is read. But with respect to standing, I want to come back to similar questions. So if a state decided that battered wife syndrome was not a defense that could be used in a murder trial or passed a law that said the willful killing of an adulterous wife is not murder, you're saying nobody would have standing to challenge that, right? Except maybe somebody who killed a non-adulterous wife. That is how those cases have been handled. The case in New York was the marital rape exception, which provided that a forcible rape of someone you were married to was not the crime of rape. And the way it was challenged was by a defendant charged and being prosecuted for rape who was not married to his victim. And it was challenged as an equal protection violation. Not every harm always has a judicial remedy in every way. Traditionally and historically, the remedy for a decision, whether to treat a matter within the criminal law or as another way, has been through a policy determination and the political process. And the states have had autonomy in that area. And the only other way I'm aware of is where defendants have been able to challenge it based on their own interests. Well, I mean, there is a carve-out, right, for where the state has abdicated, completely abdicated the protection and equal application of the laws, right? Wasn't that a line that was used by the Supreme Court in U.S. v. Texas? That decision did recognize areas on the outer edges where there might be standing. So would a state that said, you know, the willful killing of an Asian person is not going to be prosecuted as murder be that example? That would be a good argument for that example. Well, I mean, we'll hear what your adversary has to say. I imagine she'll say that this is an analogous argument. Thank you. Thank you. We'll hear rebuttal. Judge Livingston. It is very clear that these children were protected in law for 200 years. And by the amendment of the criminal law, and my adversary mischaracterizes that because the particular law is not a mere regulation. It is, in fact, a definition of person. They have redefined persons to exclude previous persons that were recognized in the law, those 24 week and above liable fetuses. I thought the definition of person didn't change. That's why you had to have a separate fetal homicide law, because it wouldn't follow just from saying it's illegal to cause the death of a person. I'm sorry. Sorry. I thought the definition of person didn't change in the reform. That, in fact, that's the reason why there was a separate provision to prohibit fetal homicide, because the unborn child wouldn't be covered by the definition of person that existed anyway. No, Your Honor. In fact, if you look at our complaint, which appears in the record on page A. I know that you allege that, but I thought, okay, I understand. We quote the statute, Your Honor, in that context. So in this instance, we believe that this case, in some ways, in reflecting on your earlier question, Your Honor, Romer may be instructive in this case, Romer v. Evans, because in that case, the United States Supreme Court struck down an act of the people, not merely the legislature, but an act of the people, that held that no Colorado ordinance could, in fact, not provide protection. The Supreme Court, in that case, thought that the ordinance was – sorry, the law was motivated by animus toward a disfavored group, right? And that's why it was invalid. Your Honor, the holding of the case was, in fact, that it caused unequal treatment to everyone else by imposing a broad and undifferentiated disability on a single group. Again, I would stress during my brief time that this is the only group of human beings in the United States that have not been afforded some level of protection, whether it's undocumented aliens, whether it is – even hippopotamuses, apparently, in Ohio, under a federal court ruling, have personhood in certain circumstances. This is the only class of human beings, and it is undisputed that they're human beings. But again, our procedural posture, Your Honors, just let us in the court. We just want you to reverse the dismissal and allow us to go forward with our amended complaint. Thank you. Thank you both, and we'll take the matter under advisement.